UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 2518 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SOCIETY OF THE MISSIONARIES OF | ) | |
| THE SACRED HEART, and | ) | |
| PHILIP DEREA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Doe[1] alleges that Defendant Father Philip DeRea sexually abused Doe over a period of about eight years in the 1980s, and that Defendant Society of the Missionaries of the Sacred Heart was negligent for failing to stop the abuse.[2] In his amended complaint, Doe brings a state-law personal injury claim against DeRea, and a negligent supervision claim against the Society. R. 7. The Society moves to dismiss the claims in Doe's amended complaint as barred by the statute of limitations (DeRea adopted the motion, so he is also a movant). R. 47, 50.[3] For reasons explained more fully below, the Society's and DeRea's motions are denied.

---

[1] Doe's motion to proceed under a pseudonym, R. 5, will be addressed in a separate order.

[2] The Court has subject matter jurisdiction over this case based on diversity jurisdiction. *See* 28 U.S.C. § 1332.

[3] DeRea moved to adopt the Society's motion to dismiss and briefs. R. 50, 72. This Court granted DeRea's motions to adopt. R. 53, 74.

# I.

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations. John Doe is a citizen of Maryland. R. 7, Am. Compl. ¶ 2. Doe was born in 1969, and grew up in Washington, D.C.. *Id.* ¶¶ 2, 7. Doe was raised in a traditional Catholic family, attended Catholic schools, and served as an altar boy. *Id.* ¶ 7. The Society ordained DeRea as a priest in 1968. *Id.* ¶ 8. Doe and DeRea met in 1980, when Doe offered to shovel snow for DeRea after a storm. *Id.* ¶ 9. Doe was around 11 years old at the time. *Id.* ¶ 10. DeRea lived and worked just blocks from Doe's home. *Id.* ¶ 9. Over the next few months, DeRea developed a relationship with Doe by offering Doe odd jobs, rides, and invitations to meals at DeRea's home. *Id.*

DeRea began to sexually abuse Doe within a few months of their initial meeting, and continued to do so for about eight years. Am. Compl. ¶¶ 10, 19. The abuse included DeRea fondling Doe, showing Doe pornographic movies, performing oral sex on Doe, having Doe perform oral sex on DeRea, having Doe masturbate DeRea to orgasm, digitally penetrating Doe, and performing anal sex on Doe. *Id.* ¶ 11. Because of Doe's deep respect for priests, Doe "did not realize at the time that there was anything wrong with DeRea's conduct." *Id.* ¶ 15. DeRea assured Doe of the "special nature" of their friendship and "repeatedly instructed [Doe] not to tell anyone about" the sexual contacts. *Id.* ¶ 17. Doe "regarded DeRea as larger than life, almost like a saint...[and] never recognized until many years later that DeRea's conduct with him was abusive." *Id.* ¶ 20.

2

In the spring of 2006, an incident with Doe's son triggered "a flood of memories into [Doe's] consciousness about the sexual abuse by DeRea" and "[f]or the first time, [Doe] began to realize what had really happened in his relationship with DeRea." Am. Compl. ¶ 22. Prior to this episode, Doe "was not cognizant that the activity engaged in with DeRea was, in fact, sexual abuse." *Id.* ¶ 23. Since 2006, as a result of the abuse, Doe has suffered from severe depression, emotional distress, episodes of binge eating, difficulties with emotional intimacy, and other psychological problems. *Id.* ¶¶ 25, 32. Doe was eventually assessed by a psychologist who determined that "the effects [of the abuse] were in a dormant stage and dissociated from [Doe's] daily life and functioning until 2006." *Id.* ¶ 31. Doe was diagnosed with a dissociative disorder that "involv[ed] active splitting off and compartmentalizing of his experience and somatic reactions, and memory disturbance." *Id.* ¶¶ 32-33. Doe's "memory of the abuse . . . was not in his conscious awareness throughout his adolescent and adult life until its emergence was triggered by an event reminiscent of the original trauma in 2006." *Id.* ¶ 33.

Because the parties' arguments about the statutes of limitations are particularly dependent on Doe's age and the timing of events, a summary of the key dates may be helpful. Doe was born in 1969. Am. Compl. ¶ 2. DeRea's abuse began sometime around 1980, when Doe was 11. *Id.* ¶ 10. In 1987, Doe turned 18. Doe was 37 when he experienced the "triggering event" in 2006 that he alleges led to his discovery of the abuse and his injuries. *Id.* ¶ 22. Doe filed his complaint on April 14, 2011, when he was 42 years old. R. 1, Compl.

## II.

Under the Federal Rules of Civil Procedure, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted); *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, although the court must take all of the factual allegations in the complaint as true, it is not required to accept as true legal conclusions couched as factual allegation. *Iqbal*, 556 U.S. at 679.

4

### III.

For reasons discussed more fully below, Doe's complaint will not be dismissed at this stage of the litigation, because (1) Doe's allegations that he did not discover that DeRea's conduct constituted sexual abuse, and he was not aware of any injuries arising from the abuse, until 2006 are sufficient to invoke the discovery rule at this stage to delay the start of the limitations period; and (2) Doe filed his claim within the limitations period imposed by the applicable statute of limitations from the date of discovery.

### A.

Although a statute of limitations defense will not normally form the basis for a motion to dismiss under Rule 12(b)(6), *see Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012), it "is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (internal citations and quotations omitted). The Seventh Circuit has noted that dismissal under Rule 12(b)(6) on the basis of the statute of limitations is "irregular," since it is an affirmative defense for which the defendant bears the burden of proof. *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). More precisely, where a plaintiff has "pleaded [himself] out of court by alleging things that, if true, devastate [his] claim," *id.*, and the basis for dismissal is the statute of

5

limitations, then the dismissal is actually based on Rule 12(c) (judgment on the pleadings), *Richards*, 696 F.3d at 637-38.

According to the amended complaint, the sexual abuse was perpetrated by DeRea between 1980 and 1988.[4] Am. Compl. ¶¶ 9-21. At that time, the limitations period in Illinois for a claim for childhood sexual abuse was governed by the general statute of limitations for personal injury actions.[5] 735 Ill. Comp. Stat. 5/13-202 (eff. July 1, 1987); *Clay v. Kuhl*, 727 N.E.2d 217, 220-21 (Ill. 2000). Although the Illinois legislature subsequently enacted a specific statute of limitations for claims of childhood sexual abuse in 1991, the Society correctly argues that such an enactment, as well as any amendments to it, are irrelevant if Doe's claims expired before 1991. *M.E.H. v. L.H.*, 685 N.E.2d 335, 339 (Ill. 1997) ("[O]nce a statute of limitations has expired, the

---

[4] The Society argues that Doe's claims based on conduct that occurred after Doe turned 18 (in 1987) cannot possibly be actionable at this time, because, no matter what, such claims are subject to the standard two-year statute of limitations for personal injury claims. R. 70, Def.'s Reply Br. at 1-3. In his response brief, Doe affirmatively states that his "claims are based only on the seven years of abuse and negligent supervision . . . that occurred prior to Doe attaining majority," and concedes that conduct after he turned 18 would not be actionable because more than two years have lapsed since the alleged discovery of his claims in 2006. R.64, Pl.'s Resp. Br. at 8 n.6. As explained below, the precise date that the actionable conduct ended is not material to this opinion, given the application of the discovery rule. There is no need to decide now whether the conduct that occurred after Doe turned 18 is relevant and admissible even though the conduct is not by itself the basis for liability.

[5] Since we decide this case under diversity jurisdiction, the Court is bound to apply the substantive law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Co., Inc.*, 313 U.S. 487, 496 (1941). As a general rule, statutes of limitations are considered to be substantive for purposes of the *Erie* doctrine. *Guaranty Trust v. York*, 326 U.S. 99, 110 (1945). However, Illinois choice-of-law rules regard statutes of limitations as procedural, and thus an Illinois court would apply its own statutes of limitations to this case, even though its choice-of-law principles might dictate the application of another state's substantive law. *Cox v. Kaufman*, 571 N.E.2d 1011, 1015 (Ill. App. Ct. 1991).

defendant has a vested right to invoke the bar of the limitations period as a defense to a cause of action...[and that right] cannot be taken away by the legislature . . .").

In 1988, the Illinois statute of limitations for personal injury actions provided that "[a]ctions for damages for an injury to the person . . . shall be commenced within 2 years next after the cause of action accrued . . . ." 735 Ill. Comp. Stat. 5/13-202 (eff. July 1, 1987). In addition, a separate provision tolled the start of the limitations period for minors until they reached the age of majority (in Illinois, age 18). 735 Ill. Comp. Stat. 5/13-211 (eff. Jan. 1, 1991). The central disagreement between the parties is when Doe's claims accrued, that is, when the limitations period began to run on Doe's claims. The Society argues that Doe's claims accrued when Doe turned 18 (in 1987) and were time-barred, at the latest, by 1990, two years from the date of the last instance of abuse. R. 48, Def.'s Mem. Supp. Dismiss. at 2. Thus, the Society argues, the 1991 enactment of a special statute of limitations for childhood sexual abuse claims does not apply to Doe's claims because they were already time-barred in 1991. *Id.*

Doe argues in response that, under the discovery rule, his claims did not accrue until 2006, and the recent amendments to the statute of limitations for childhood sexual abuse claims therefore do apply. R. 64, Pl.'s Resp. Br. at 5-7. If the most recent amendment to the childhood sexual abuse statute of limitations applies, Doe need only have commenced his action within 20 years of the date he "discovers or through the use of reasonable diligence should discover both (i) that the act of childhood sexual abuse occurred and (ii) that the injury was caused by childhood sexual abuse." 735 Ill. Comp. Stat. 5/13-202.2(b) (eff. July 1, 2011); Pl.'s Resp. Br. at 6. The parties thus disagree

7

whether the discovery rule delayed the start of the limitations period for Doe's claims until 2006.

## B.

Although the Illinois legislature later codified the discovery rule specifically for childhood sexual abuse claims, at the time of the misconduct alleged in Doe's complaint, the common law version of the discovery rule would have applied to Doe's claims. *Clay*, 727 N.E.2d at 220-221. The discovery rule comprises a two-part inquiry. "Under the [common law] discovery rule, a party's cause of action accrues when [1] the party knows or reasonably should know of an injury and [2] that the injury was wrongfully caused." *Id.* at 220 (citations omitted). In light of that two-part inquiry, Illinois case law generally recognizes that the discovery rule's applicability is ordinarily a fact question. "The issue whether an action was brought within the time allowed by the discovery rule is generally resolved as a question of fact," *Clay,* 727 N.E.2d at 221 (citations omitted), but may be determined as a matter of law "when the answer is clear from the pleadings." *Id.*; *Witherell v. Weimer,* 421 N.E.2d 869, 874 (Ill. 1981) ("Where it is apparent from the undisputed facts . . . that only one conclusion can be drawn, the question [of the discovery rule] becomes one for the court."). Here, Doe's amended complaint, accepting the allegations are true, supports application of the discovery rule: Doe alleges that he "did not recognize [DeRea's conduct] as sexual abuse until 2006," and Doe alleges that his injuries "first actively manifested in 2006." Am. Compl. ¶¶ 38, 39. Moreover, DeRea allegedly used his authority and position of trust to prevent Doe from realizing that the abuse was wrongful (until 2006). Am. Compl.

¶¶ 11, 15, 17, 22, 23, 31, 38, 39. Based on these allegations, Doe's claim did not accrue until 2006 because it was only then that he knew, or reasonably should have known, of the injuries, and that the injuries were wrongfully caused.

In response, the Society argues that the discovery rule is inapplicable to save Doe's claims. Def.'s Mem. Supp. Dismiss. at 9. According to the Society, the Illinois Supreme Court held in *Clay v. Kuhl*, 727 N.E.2d 217 (Ill. 2000), that sexual abuse is a "sudden traumatic event" and therefore "the limitations period commences the moment the act of abuse occurred." *Id.* (citing *Clay*, 727 N.E.2d at 222). But Doe correctly points out in his response that the Illinois Supreme Court has never so held. Pl.'s Resp. Br. at 11. Rather, in *Clay*, the Illinois Supreme Court specifically noted that it made "no determination" whether, as a matter of law, the discovery rule could—or could not—apply to claims of childhood sexual abuse. 727 N.E.2d at 222; *see also id.* at 220 ("We need not determine in this case whether the instances of childhood sexual abuse alleged here must be considered 'sudden traumatic events' for purposes of applying the statute of limitations."). *Clay* analyzed the plaintiff's claims assuming the discovery rule might apply, and found that the discovery rule—in that case—was not "of assistance" to the plaintiff. *Id.* at 220.

Although *Clay* did not hold the discovery rule inapplicable to childhood sexual abuse claims as a matter of law, *Clay* did reject the application of the discovery rule to allegations similar to (though, as explained below, distinguishable from) those in Doe's amended complaint. So an extended discussion of *Clay* is warranted. In that case, Clay brought suit in 1996 against clergyman Kuhl and the religious order to which Kuhl

9

belonged (the same defendant as in this case, the Society), alleging that Kuhl had sexually abused Clay throughout the 1970s, and that the Society was aware of the abuse but did not take steps to prevent it. *Clay*, 727 N.E.2d at 219. The defendants moved to dismiss, arguing that Clay's claims were barred by the applicable statute of limitations. *Id.* Clay countered, as Doe does here, that the limitations period on her claims was extended by the discovery rule. *Id.* at 220. To decide the case, the Illinois Supreme Court analyzed whether Clay "establish[ed] the timeliness of her action under the discovery rule," and ultimately determined that she had not. *Id.* The Court found that "the allegations of [Clay's] complaint make it clear that [Clay] had sufficient information about her injury and its cause to require her to bring suit long before the date of discovery alleged in the complaint." *Id.* at 221. The Court further held:

> Given the allegations in the [complaint], which show that [Clay] was *always aware of the misconduct* charged, and the absence of any contrary assertion that [Clay] repressed memories of the abuse, we believe that [Clay's] action must be considered untimely under the discovery rule.

*Id.* at 221-22 (emphasis added). The crucial component of the Court's holding was the majority's conclusion that Clay was "always aware of the misconduct charged."[6] *Id.* at

---

[6] Without the benefit of the entire record in *Clay*, it is not crystal clear what parts of the amended complaint led the Court to conclude that Clay had conceded that she always knew of the injury, or at least some of the injury. Arguably, at least one allegation in Clay's third amended complaint is to the contrary, namely, the allegation that "[a]t the time the abuse occurred, [Clay] did not know it was abnormal behavior." 727 N.E.2d at 221. Nevertheless, as explained above, the Illinois Supreme Court concluded that Clay "had sufficient information about her injury and its cause" that she should have brought her claim "long before the date of discovery alleged in the complaint." *Id.* Apparently, somewhere in the litigation Clay admitted that she was aware of *some* injury before the date of her alleged "discovery." *See id.* (quoting the allegation in Clay's complaint that "the injuries were not caused immediately but evolved with the overlay of life experience").

10

221. *Clay*'s holding therefore, as described by the Illinois Supreme Court in a later case, is that the discovery rule cannot save a plaintiff's otherwise time-barred claim for childhood sexual abuse when the plaintiff "was *aware of the abuse as it occurred* and does not allege that she repressed memories of that abuse." *Parks v. Kownacki*, 737 N.E.2d 287, 294 (Ill. 2000) (citing *Clay*) (emphasis added).

*Clay* is distinguishable because here Doe alleges not merely that he was unaware of the causal connection between his injuries and the abuse by DeRea until 2006, but that he "did not recognize [DeRea's conduct] as sexual abuse until 2006," and that his injuries "first actively manifested in 2006." Am. Compl. ¶¶ 38, 39. In other words, whereas Clay apparently suffered injuries related to the abuse well before the date of her alleged discovery, and "was always aware of the misconduct," *Clay*, 727 N.E.2d at 220, Doe has alleged that he did not recognize that DeRea's conduct was *mis*conduct or that it was harmful, and did not suffer injury, until 2006. Nor, as alleged by Doe, *should* Doe have known that DeRea's conduct was misconduct, given Doe's age at the time and DeRea's assurances of the "special nature of their friendship." Am. Compl. ¶ 17. Accepting Doe's allegations as true, as we must when evaluating a motion to dismiss, Doe has pled enough facts to trigger the application of the discovery rule at this stage of the litigation. *See Witherell,* 421 N.E.2d at 874 (the discovery rule will delay the start of the limitations period until a plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused").

11

It is true that *Clay* also went on to address and reject Clay's argument that her injuries were "latent to some extent," and that her failure to "fully" discover her injuries was sufficient to delay the running of the limitations period. *Clay*, 727 N.E.2d at 222. The Society has latched onto the language in this portion of *Clay*'s analysis to argue that Doe's claims must be dismissed under the statute of limitations. Def.'s Mem. Supp. Dismiss. at 9. Specifically, the Society argues that "Illinois law presumes an intent to harm and a resulting injury" from childhood sexual abuse, and thus the limitations clock immediately starts ticking from the moment the abuse begins and the discovery rule cannot prevent the ticking. *Id.* (citing *Clay*, 727 N.E.2d at 222). But that does not follow. The actual point that *Clay* was making was that the plaintiff—who knew of *some* injury but not necessarily its *full* extent—did not have to wait to file suit until she knew of the injury's full extent. It was in this context that the Illinois Supreme Court stated, "Notably, Illinois law presumes an intent to harm and a resulting injury from the type of misconduct allegedly committed by Kuhl. . . . Thus, it was not necessary that the plaintiff postpone the commencement of her action until she was aware of the full extent of her injuries." *Clay*, 727 N.E.2d at 222 (citations omitted). So, for someone like Clay, who knew that she had suffered some injury, the abuse claim accrued and the limitations clock started ticking. What the Court in *Clay* was understandably concerned about was a rule that would "improperly create a subjective standard," by forcing a court to decide *how much* injury is needed before the discovery rule applies (or does not apply). *Id.* at 223. If Doe alleged in this case that he recognized DeRea's conduct as abusive when it occurred, but simply did not suffer the

12

full extent of his injuries until 2006, his claim would be barred by the statute of limitations. Doe alleges, however, that no injury manifested until 2006. Am. Compl. ¶¶ 31, 39.

Indeed, the presumption of intentional injury *allows* a victim of abuse who knows that he or she has suffered some injury to bring the claim immediately following the abuse, without the need to know the full extent of the injury.[7] Allowing suit to be brought by a victim who knows of some injury is a far cry from holding that the discovery rule can never apply to abuse claims simply because there is a presumption of intentional injury. *Clay* did not reject the discovery rule's application to abuse cases that present the right facts. Doe alleges that no injury manifested until 2006, Am. Compl. ¶¶ 31, 39, and that Doe did not recognize DeRea's actions as misconduct until then. These allegations are sufficient to allow Doe to invoke the discovery rule at this stage.[8]

Although not cited by the parties, it is worth addressing a recent case decided by the Illinois Appellate Court, *Softcheck v. Imesch*, 855 N.E.2d 941 (Ill. App. Ct. 2006),

---

[7] *See Doe v. Montessori School*, 678 N.E.2d 1082, 1089 (Ill. App. Ct. 1997) (holding that injury is presumed in claims of childhood sexual abuse for purposes of determining whether a plaintiff who was 2 ½ years old at the time of the abuse may proceed with her claim even though she did not recall the abuse).

[8] The Society's reference to Seventh Circuit precedent is similarly unavailing. *Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006), cites to *Clay* in determining whether the discovery rule should apply, but does so in the context of holding that the discovery rule does not delay the limitations period on a plaintiff's claim where it was obvious that she suffered injuries at the time the alleged sexual assault occurred, even if she only later discovered the full extent of her injuries. *Id.* at 692-93. *Hollander* is also distinguishable because it involved the forcible sexual assault and kidnaping of an adult, *id.* at 690-91, instead of a minor who is less able to understand that he has been injured.

because of its factual similarity to this case and because its reading of *Clay* is potentially at odds with this Court's analysis. In *Softcheck*, multiple plaintiffs brought tort claims against two priests and their Diocese, alleging that the priests had abused them in the late 1970s. 855 N.E.2d at 943. With regard to the timing of their suit, the *Softcheck* plaintiffs alleged that:

> [They] did not, in fact, begin to perceive the wrongfulness of the conduct of defendants until 2002 when they heard of pedophile priest litigation involving other priests and dioceses and began to realize that their own experiences may have been victimization possibly having a causal relation to their emotional and psychological disturbances.

*Id.* at 944. The court in *Softcheck* determined that the plaintiffs' claims were time-barred because they did not plead facts sufficient to invoke the discovery rule. *Id.* at 947.

In arriving at its conclusion, *Softcheck* stated that the case was "on all fours" with *Clay*. *Id.* Despite the plaintiffs' allegations that they did not understand the wrongfulness of the defendants' conduct at the time it occurred, *Softcheck* held that the plaintiffs' allegations "simply do not lead to a reasonable inference sufficient to invoke the discovery rule." *Id.* at 948. According to *Softcheck*, *Clay* held that a childhood sexual abuse victim cannot invoke the discovery rule unless the plaintiff alleges that "defendants or anyone tried to convince [him] . . . that sex between a priest and a child is not wrongful but, rather, beneficial to the child's growth." *Softcheck*, 855 N.E.2d at 948 (citing *Clay*). *Softcheck* reached this conclusion based on its reading of the *Clay*'s discussion of Illinois law's presumption of an intent to harm in cases of childhood sexual abuse. *Id.* (citing *Clay*, 727 N.E.2d at 222). But as explained above, *Clay*'s

14

discussion of the presumption of intent to harm, and the difficulties of a "subjective" standard, were in reference to the rule in Illinois that a plaintiff's failure to comprehend "the *full* extent" of an injury is insufficient to invoke the discovery rule so long as the plaintiff understood that he or she has suffered *some* injury. *Clay*, 727 N.E.2d at 222-23. To the extent that *Softcheck* holds otherwise, this Court's assessment is that the Illinois Supreme Court would not agree. *See Allstate Ins. Co. v. Menards*, 285 F.3d 630, 635 (7th Cir. 2002) (state supreme court's interpretation of state law controls in diversity cases).

What's more, even accepting *Softcheck* on its own terms, that case might be distinguishable. Here, in his amended complaint Doe alleges that DeRea (for whose conduct the Society is allegedly liable) so deeply indoctrinated Doe that he did not realize the abuse was wrongful until the triggering event in 2006 and, just as importantly, that the injuries did not manifest themselves until that later time. Am. Compl. ¶¶ 11, 15, 17, 22, 23, 31, 38, 39. In contrast, it appears that the plaintiffs in *Softcheck* suffered from psychological and emotional disturbances before 2002, and simply did not realize the *connection* to the abuse they suffered until 2002. *Softcheck*, 855 N.E.2d at 944. Therefore, even assuming *Softcheck* properly interpreted *Clay*, those facts are distinguishable from this case, where Doe alleges that injuries did not manifest themselves until 2006.

Lastly, both sides in this case sought to rely on another, recently-decided abuse case, namely, *Wisniewski v. Diocese of Belleville*, 943 N.E.2d 43 (Ill. App. Ct. 2011). On one side, Doe argues that *Wisniewski* holds that the discovery rule may apply in cases

like Doe's to delay the limitations period for claims of childhood sexual abuse, Pl.'s Resp. Br. at 9-10, whereas the Society claims that *Wisniewski* "supports a dismissal in the instant action," Def.'s Mem. Supp. Dismiss. at 9. But the procedural posture of *Wisniewksi* is entirely different from this case, and it is therefore difficult to draw any lessons from its analysis of *Clay*. In *Wisniewski*, the plaintiff brought claims not only of battery and negligence, but also alleged that the Diocese had fraudulently concealed Wisniewski's cause of action. *Wisniewski*, 943 N.E.2d at 68. A jury trial was held on the fraudulent concealment claim to determine whether that could revive Wisniewski's claims that were otherwise barred by the statute of limitations and statute of repose. *Id*. The opinion arose from the trial court's denial of the Diocese's motion for a judgment notwithstanding the verdict, on the jury's finding that the Diocese had fraudulently concealed Wisniewski's cause of action. *Id*. at 69. Given that posture, the appellate court did not directly address the question of whether the discovery rule could apply to Wisniewski's claims, since the trial court had apparently already decided that issue in the negative on an earlier summary judgment motion. The appellate court held, however, that the trial court properly submitted the question of when Wisniewski discovered his claim to the jury as a factual issue, and distinguished *Clay* on that basis. *Id*. at 84. But that analysis was in the context of the court's discussion of the fraudulent concealment issue, and thus, its applicability to this case is questionable. At most, *Wisniewski* provides indirect support, consistent with this opinion, that *Clay* does not hold, as a matter of law, that the discovery rule cannot apply to claims of childhood sexual abuse.

16

C.

Because the Court holds, at this stage, that the amended complaint adequately alleges facts that permit the discovery rule to delay the start of the limitations period on Doe's sexual abuse claims until 2006, analysis of the amendments to the specialized statute of limitations for childhood sexual abuse claims is necessary.[9] According to the allegations of Doe's complaint, and the analysis above, Doe discovered his claim sometime in 2006. Therefore, the Court must determine whether Doe filed his complaint within the time required by the statute of limitations that was in place between 2006 and the time that Doe filed suit on April 14, 2011. In 2006, 735 Ill. Comp. Stat. 5/13-202.2 permitted childhood sexual abuse claims to be filed within five years of the date of discovery. *See* 735 Ill. Comp. Stat. 5/13-202.2 (eff. July 24, 2003), 2003 Ill. Legis. Serv. P.A. 93-356 (West). On January 1, 2011, before Doe's five years to file his claim could have expired, the statute was again amended to allow childhood sexual abuse claims to be filed within 20 years of the date of discovery. *See* 735 Ill. Comp. Stat. 5/13-202.2 (eff. Jan. 1, 2011), 2010 Ill. Legis. Serv. P.A. 96-1093 (West). As with previous amendments, the 2011 amendments "apply to actions commenced on or after [January 1, 2011] . . . if the action would not have been time barred under any

---

[9] As noted, in 1991 the Illinois legislature formally codified the common law discovery rule for claims of childhood sexual abuse. *See* 735 Ill. Comp. Stat. 5/13-202.2 (eff. Jan. 1, 1991), 1990 Ill. Legis. Serv. P.A. 86-1346 (West). Because the parties here do not argue, and the Court does not find, that the enactment or any subsequent amendments to it narrowed the common law discovery rule, the Court need not analyze whether Doe's invocation of the discovery rule survived each iteration of 735 Ill. Comp. Stat. 5/13-202.2. *See D.P. v. M.J.O.*, 640 N.E.2d 1323, 1326 (Ill. App. Ct. 1994) (noting that the discovery rule in 13-202.2 "correlates" with the judicially developed discovery rule).

statute of limitations or statute of repose prior to [January 1, 2011]." *Id*. Because Doe's claims were not barred by any previously-effective statutes of limitations, in light of the discovery rule, the 2011 amendment applies to his claims, and he was well within the 20-year limitations period when he filed suit in April 2011.

## IV.

For the reasons stated above, Defendants' motion to dismiss [R. 47] is denied. Both Defendants shall file an answer to the amended complaint on or before December 4, 2012. Status hearing is set for December 11, 2012 at 10 a.m.

ENTERED:

*Edmond E. Chang*

_____
Honorable Edmond E. Chang
United States District Judge

DATE: November 13, 2012