UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 11-cv-2518 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| SOCIETY OF THE MISSIONARIES OF ) | |
| THE SACRED HEART and PHILIP ) | |
| DEREA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Society of the Missionaries of the Sacred Heart ("MSC") filed the present Contested Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37 (Dkt. No. 270) (the "Motion"), seeking to hold Plaintiff John Doe[1] ("Plaintiff" or "Doe") accountable for a late production of e-mails in response to MSC's written discovery requests. Although MSC issued its document requests on February 28, 2012, Doe did not produce the e-mails at issue until the last day of fact discovery more than one-and-a-half years later. As a sanction for the late production, MSC asks the Court to dismiss Doe's lawsuit in its entirety. Alternatively, in case the Court declines to impose such a harsh sanction, MSC requests that discovery be reopened as to certain witnesses, with defendants MSC and Philip DeRea (together, "Defendants") granted leave to request additional discovery based on any information and evidence that becomes available as a result. MSC also seeks an order requiring Doe to pay the reasonable attorney fees incurred in bringing the Motion and the reasonable costs for any depositions that are reopened.

---
[1] The Court previously held that Plaintiff may proceed with this action under the pseudonym "John Doe." (Dkt. No. 141.)

For the reasons set forth below, the Court denies MSC's Motion to the extent it requests dismissal of this lawsuit, but grants MSC's request to reopen discovery as to particular witnesses and for the limited purposes described below. The Court also declines to order Doe to pay attorneys' fees or the costs associated with the reopened discovery.

## I.

Plaintiff Doe filed this lawsuit against Defendants MSC and DeRea alleging state law personal injury and negligent supervision causes of action. As set forth in the Amended Complaint, Doe alleges that DeRea, an ordained MSC priest, sexually abused Doe, and that MSC, an apostolic congregation of the Catholic Church, negligently supervised DeRea. Doe claims that DeRea began sexually abusing him in 1980, when Doe was 11 years old. (Dkt. No. 7, Am. Cmplt. at ¶¶ 10-11.) According to Doe, the abuse lasted for eight years, but he did not recognize that he had been injured until 2006. (*Id*. at ¶¶ 19, 22.) Doe alleges that he was eventually assessed by a psychologist who determined that "the effects [of the abuse] were in a dormant stage and dissociated from [Doe's] daily life and functioning until 2006." (*Id.* at ¶ 31.) Doe further alleges that he was diagnosed with a dissociative disorder that "involv[ed] active splitting off and compartmentalizing of his experience and somatic reactions, and memory disturbance." (*Id.* at ¶¶ 32-33.) According to Doe, "memory of the abuse . . . was not in his conscious awareness throughout his adolescent and adult life until its emergence was triggered by an event reminiscent of the original trauma in 2006." (*Id.* at ¶ 33.)

Doe filed this lawsuit in April 2011. In August 2011, Defendants moved to dismiss the complaint on statute of limitations grounds, arguing that Doe's claims accrued when Doe turned 18 years old in 1987 and became time-barred by 1990 – *i.e.*, two years from the date of the last instance of the alleged abuse. The Court denied the motion to dismiss for the reasons stated in

the November 13, 2012 Memorandum Opinion and Order. (Dkt. No. 140.) The Court found that Doe had adequately alleged that no injury manifested until 2006 and that Doe did not recognize DeRea's actions as misconduct until then. Thus, under the discovery rule, Doe's claims did not accrue until 2006. (*Id.* at 13.) Based on the 2006 accrual date, Doe filed suit well within the 20-year limitations period that applied when he filed suit in April 2011. (*Id*. at 17-18.)

This Motion relates to 148 pages of e-mails that were produced by Doe on September 3, 2013 – the day that fact discovery closed (the "September Production"). The September Production included e-mails that Defendants claim raise concerns regarding Doe's credibility, especially with respect to his claim that he was not cognizant of being hurt by Defendants' actions until 2006. (Dkt. No. 271, Def's Mem. at 5.) For example, Defendants highlight the fact that in one e-mail to his parents, Doe references contacting an attorney in 1996. (*Id.* at 5; Ex. I.) Other documents that were part of the September Production included e-mails between Doe and his ex-wife, e-mails to an advocacy group known as SNAP,[2] and e-mails to litigation financing companies regarding potential funding for litigation against DeRea. (*Id.* at Ex. A.)

On September 10, 2013, counsel for MSC sent a letter to Peter Gillon, an attorney representing Doe, expressing concerns over what MSC considered to be the untimeliness of the September Production. (*Id.* at 5; Ex. J.) In a September 13, 2013 letter, Mr. Gillon responded that the production was not untimely as the documents were only discovered in August 2013, after the deposition of Doe's father. (*Id.* at Ex. K, p. 5.) Mr. Gillon's letter also enclosed a declaration from Doe, in which he stated, among other things, that Doe's reference to contacting an attorney prior to 2006 had been a typo and that Doe's first contact with an attorney regarding

---

[2] MSC quotes SNAP's website as stating that SNAP is "the largest, oldest and most active support group for women and men wounded by religious authority figures (priests, ministers, bishops, deacons, nuns and others)." (Dkt. No. 271, Def's Mem. at 6 n.2.)

3

a potential lawsuit against DeRea was in 2010, when Doe spoke with an attorney named Jeffrey Anderson. (*Id.* at Ex. L, ¶¶ 2, 4.)

MSC filed this Motion on October 4, 2013. According to MSC, with the late September Production, Doe failed to comply with his duty to supplement his discovery responses under Federal Rule of Civil Procedure 26(e)(1)(A). MSC further asserts that, given the importance of these documents to the defense, "the only reasonable conclusion is that the Plaintiff intentionally withheld these documents because they are fatal to his case. If the delay in production was not intentional, it was certainly grossly negligent." (Dkt. No. 269, Def's Mem. at 6, 9.) Accordingly, MSC asks the Court to dismiss Doe's case under Rule 37, or, in the alternative, to grant leave for Defendants to reopen discovery on a limited basis. (*Id.* at 14-15.) Specifically, if the Court declines to dismiss the case, the MSC seeks additional discovery from:

- Plaintiff;

- Plaintiff's parents and ex-wife;

- Peter Gillon and his prior law firms, in order to determine if and when Doe contacted Mr. Gillon prior to 2010 and to learn the extent of Mr. Gillon's experience handling sexual abuse lawsuits;

- Jeffrey Anderson and his law firm, in order to determine if and when Doe contacted Mr. Anderson; [3]

- Barbara Blaine, director of SNAP, in order to ask her about e-mails between Doe's attorneys and her that were part of the September Production;

---

[3] The Court is cognizant of the fact that the names of certain individuals and entities from which MSC seeks discovery have been redacted from the publicly-available version of MSC's Motion. (*See* Dkt. No. 268.) We note, however, that the identities of these individuals and entities are disclosed and discussed in Plaintiff's publicly-available response to the Motion (which includes unredacted declarations from three of them) (*see* Dkt. No. 278) and, in some cases, the public version of MSC's reply (*see* Dkt. No. 279). The Court notes that none of these potential witnesses are minors; nor do their respective roles in this lawsuit raise any apparent concerns regarding their personal privacy that would necessitate confidential treatment. Accordingly, the Court finds it unnecessary to conceal their identities in the context of this Memorandum Opinion and Order.

- two litigation financing companies identified in MSC's Motion that corresponded with Doe regarding the potential funding of a lawsuit against DeRea and MSC; and

- America Online ("AOL") and Google, to subpoena Doe's e-mail records.

(*Id.*) Defendants also ask the Court to order Doe to pay the reasonable attorney fees incurred in bringing this Motion, as well as the reasonable costs, including travel, for all depositions that must be reopened. (*Id.* at 2-3.)

Doe does not deny that the documents included in the September Production were responsive to requests that were served by Defendants at the beginning of discovery. Rather, Doe argues that the late production of these documents was not in bad faith. According to Doe, his counsel only became aware that there may have been gaps in his document production in August 2013, during the deposition of Doe's father. (Dkt. No. 277, Pl's Opp'n. to Def's. Mot. at 3.) This prompted Doe's counsel to undertake additional searches of Doe's e-mail, which led to the recovery of certain e-mails that AOL had previously informed Doe were unrecoverable. (*Id.* at 4.) Doe blames the late production of the relevant documents on Defendants' dilatory behavior in scheduling depositions, and further argues that because Defendants themselves have engaged in "truly shocking disregard for their discovery obligations," MSC is not entitled to sanctions. (*Id.* at 5-9.) Doe also attempts to show a lack of prejudice in the timing of the September Production by submitting declarations from Ms. Blaine, Mr. Gillon, and Mr. Anderson, in which each disclaims knowledge of any relevant facts. (*Id.* at 9-13, Exs. 7, 9, 10.)

## II.

Dismissal "is an extreme sanction and is thus permitted only in cases of 'flagrant bad faith' or counsel's 'callous disregard' of responsibilities." *Cont'l Ins. Co. v. Chase Manhattan Mortgage Corp.*, 59 F. App'x 830, 841 (7th Cir. 2003) (*citing National Hockey League v.*

*Metropolitan Hockey Club*, *Inc.*, 427 U.S. 639, 643 (1976)). A movant seeking the sanction of dismissal must establish, by at least the preponderance of the evidence, that the opposing party's actions have displayed willfulness, bad faith, or fault. *Negrete v. National R.R. Passenger Corp.*, 547 F.3d 721, 724 n.1 (7th Cir. 2008).[4] "Willfulness" and "bad faith" are characterized by conduct that is either done intentionally, for the purpose of hiding adverse information, or in reckless disregard of a party's obligations to comply with a court order. *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 1997). In some cases, "fault"—separate from bad faith or willfulness—may form a sufficient basis for sanctions. *Marroco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). "Fault, however, is not a catch-all for any minor blunder that a litigant or his counsel might make. Fault, in this context, suggests objectively unreasonable behavior; it does not include conduct that we would classify as a mere mistake or slight error in judgment." *Long*, 213 F.3d at 987.

The Court denies MSC's Motion to the extent it seeks dismissal of this action. MSC has not established willfulness, bad faith, or fault by the preponderance of the evidence. From all indications, Doe and his counsel first became aware that some of Doe's documents had not been produced during the August 14, 2013 deposition of Doe's father. In response, Doe undertook additional searches of his e-mail records and produced these documents—which were previously thought to be unrecoverable—by September 3, 2013. Defendants argue that "the timing of the [September Production] speaks for itself." (Dkt. No. 280, Def's Reply at 3.) However, the Court does not believe that the technical issues that appear to have prevented Doe from recovering certain AOL e-mails establish cause for dismissal. Nor does the 20-day time lag between Doe

---

[4] Other Seventh Circuit case law holds that a movant seeking the sanction of dismissal must establish that the opposing party's actions displayed willfulness, bad faith, or fault by clear and convincing evidence. *See, e.g., Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003). For present purposes, the Court's decision would be the same under either the preponderance of the evidence standard or the clear and convincing standard.

first becoming aware of the existence of un-produced documents and Doe's production of these documents establish cause for dismissal. In short, MSC has failed to show by a preponderance of the evidence that Doe acted in bad faith, willfully, or with fault.

The Court does recognize, however, that Defendants may have been prejudiced by the timing of the September Production. Had the September Production been available to Defendants prior to the close of discovery, they could have used those documents during the depositions they actually took and, moreover, they might have elected to depose additional witnesses whose significance was not otherwise apparent. The Court thus grants MSC's request to reopen discovery on a limited basis, so that Defendants can develop evidence based on the documents and information produced as part of the September Production. *See G & S Metal Consultants, Inc. v. Continental Cas. Co.*, 3:09–CV–493–JD, 2013 WL 4950802 (N.D. Ind. Sept. 10, 2013) (declining to impose sanctions but reopening discovery only with regard to matters contained in late disclosures); *see also Jacobeit v. Rich Tp. High School Dist. 227*, 09 CV 1924, 2011 WL 2039588 at *4 (N.D. Ill. May 25, 2011) (allowing limited reopening of discovery so that plaintiff could ask witnesses about documents tardily produced by defendant). Specifically, the Court grants MSC's Motion with regard to the reopening of the deposition of Plaintiff Doe, his ex-wife, and his parents. The reopening of these depositions shall be limited only to information that was not available to Defendants prior to the September Production.

The Court also grants MSC's request with respect to some, but not all, of the entities from which MSC seeks discovery for the first time. While it appears that Defendants had no knowledge of the relevance of some of these entities prior to the September Production, with respect to others, Defendants were aware that the entities had relevant information but chose not to pursue it prior to the close of discovery. In the latter circumstance, Defendants were not

prejudiced by any act or omission by Doe, but rather made their own strategic choices to forgo discovery with respect to these entities, and the Court declines to grant Defendants a second bite at the apple. *See Jacobeit*, 2011 WL 2039588 at *4 n.2 (denying movant's request to depose two witnesses it had known about prior to tardily-produced documents but had chosen not to depose prior to the close of discovery).

Thus, the Court will allow discovery as follows:

- **The Court denies Defendants leave to depose Peter Gillon or to subpoena Gillon's former law firms.** Defendants were aware of Mr. Gillon's relevance to the case based on testimony from Doe's April 2013 deposition several months before the September Production. (Dkt. No. 271, Def's Mem. at Ex. B, 178:22-23.) Had Defendants wished to buttress their statute of limitations argument by seeking discovery from Gillon regarding the veracity of Doe's statement regarding his first contact with an attorney, they could have done so before the close of discovery.

- **The Court denies Defendants leave to depose SNAP director Barbara Blaine.** Even before the September Production, Defendants were on notice that SNAP and its employees had information relevant to this litigation, as Doe produced an e-mail referencing his contact with SNAP prior to the close of discovery. (*Id.* at 4, Ex. H.) MSC subsequently served SNAP with a subpoena for documents, with which SNAP complied. (Dkt. No. 277, Pl's Opp'n. to Def's Mot. at Ex. 9, ¶4.) Yet Defendants chose not to depose Ms. Blaine or anybody else at the organization prior to the close of discovery.

- **The Court grants Defendants leave to depose Jeffrey Anderson and to subpoena records from his law firm relating to Doe.** Defendants first learned about Doe's contact with Mr. Anderson in Doe's declaration, which was sent to them after the close of discovery as part of the correspondence regarding the September Production.

- **The Court grants Defendants leave to subpoena records from the two litigation financing companies referenced in MSC's Motion.** It appears that Defendants were unaware of Doe's contact with these companies prior to the September Production, and were not in a position to request discovery from them prior to the discovery cutoff.

- **The Court denies Defendants leave to subpoena AOL and Google.** During discovery, Defendants elected to obtain Doe's e-mail through document requests to Doe himself. Defendants were aware that Doe maintained e-mail accounts with AOL and Google by at least April 2, 2012 and could have attempted to subpoena them

8

during discovery, but elected not to do so.[5] Absent evidence that Doe acted in bad faith, the prejudice to Defendants resulting from the lateness of the September Production does not warrant a full-scale reopening of discovery as to all of Doe's e-mail correspondence, regardless of subject matter.

Finally, the Court denies MSC's request that Doe pay attorney fees incurred in bringing this Motion and costs for depositions that must be reopened. Simply put, in light of "the entire procedural history of this case" (including the lack of evidence that Doe's September Production was made in bad faith and Defendants' own questionable conduct over the course of the discovery process), the Court declines to impose the requested sanctions. *See Rice v. City of Chicago*, 333 F.3d 780, 785-86 (7th Cir. 2003).

### III.

In conclusion, for the reasons set out above, the Court:

1. DENIES MSC's Motion to the extent it asks the Court to dismiss the Amended Complaint.

2. GRANTS MSC's request to reopen Doe's deposition, with questioning to be limited to addressing the e-mails included in the September Production. At this time, the Court DENIES MSC's request to require Doe to appear for his reopened deposition in the Northern District of Illinois, without prejudice, as premature, and instructs the parties to meet and confer regarding the timing and location of Doe's deposition prior to the filing of any renewed motion for relief on this point.

---

[5] Even if Defendants had subpoenaed AOL and Google during the discovery period, it is not clear Defendants would have been entitled to production of Doe's e-mail communications. Several courts have held that the Stored Communications Act ("SCA") bars internet service providers from releasing information about the content of e-mails in response to civil discovery subpoenas. *See, e.g., Mintz v. Mark Bartelstein & Associates, Inc.*, 885 F.Supp.2d 987, 993-94 (C.D. Cal. 2012) (SCA prohibited telecommunications provider from disclosing content of electronic communications pursuant to subpoena); *Bower v. Bower*, 808 F.Supp.2d 348, 350 (D. Mass. 2011) (SCA prohibited Internet service provider from producing the emails of non-party, which were sought pursuant to a subpoena).

3. GRANTS MSC's request to reopen the depositions of Doe's parents, with questioning to be limited to addressing the e-mails included in the September Production.

4. GRANTS MSC's request to reopen the deposition of the Doe's ex-wife, with questioning to be limited to addressing the e-mails included in the September Production.

5. DENIES MSC's request for leave to depose Peter Gillon.

6. GRANTS MSC's request for leave to depose Jeffrey Anderson.

7. DENIES MSC's request for leave to depose Barbara Blaine.

8. DENIES MSC's request for leave to subpoena the records of the law firms at which Mr. Gillon has worked.

9. GRANTS MSC's request for leave to subpoena the records of Jeffrey Anderson's law firm, for the limited purpose of determining whether and when Doe contacted Mr. Anderson.

10. GRANTS MSC's request for leave to subpoena the records of the two litigation financing companies with which Doe has communicated regarding this lawsuit.

11. DENIES MSC's request for leave to subpoena Doe's e-mail records from AOL and Google.

12. DENIES MSC's Motion to the extent MSC asks that Doe be ordered to pay the reasonable attorney fees incurred in bringing the Motion.

13. DENIES MSC's Motion to the extent MSC asks that Doe be ordered to pay the reasonable costs for all depositions that must be reopened.

The parties shall complete the fact discovery described herein by February 4, 2014. The parties shall seek leave of Court prior to requesting any additional discovery based on information and evidence that becomes available as a result of the reopended discovery. The

parties shall strictly comply with Local Rule 37.2 prior to seeking additional relief from the Court.

ENTERED:

_____
Honorable Andrea R. Wood
United States District Judge

DATE: January 3, 2014