**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11-cv-02518 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| SOCIETY OF THE MISSIONARIES OF THE | ) | |
| SACRED HEART, an Illinois Not-For-Profit | ) | |
| Corporation, and PHILIP DEREA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John Doe[1] filed this lawsuit against Defendants Society of the Missionaries of the Sacred Heart ("MSC") and Philip DeRea ("DeRea") alleging state law personal injury and negligent supervision causes of action. As set forth in the Amended Complaint, Doe alleges that DeRea, an ordained MSC priest, sexually abused Doe, and that MSC, an apostolic congregation of the Catholic Church, negligently supervised DeRea. Presently before the Court is Plaintiff John Doe's Cross-Motion for Protective Order, for Reconsideration, and to Quash Subpoenas (the "Cross-Motion") (Dkt. No. 298). For the reasons set forth below, the Cross-Motion is denied to the extent it asks the Court to reconsider its prior ruling regarding Defendants' ability to seek discovery regarding communications between Plaintiff and certain litigation financing companies. However, the Cross-Motion is granted to the extent it asks the Court, for the first time, for a protective order limiting production of these documents based on the attorney work product doctrine.

---

[1] The Court previously granted Plaintiff's motion to proceed under the pseudonym John Doe. (Dkt. No. 141.)

# I.

The Cross-Motion arises out of a dispute over third-party discovery. On January 3, 2014, the Court issued an order (the "January 3 Order") granting MSC leave, *inter alia*, to subpoena records from two litigation financing companies with which Plaintiff communicated regarding this lawsuit.[2] (Dkt. No. 295.) On January 29, 2014, MSC served Plaintiff with a Notice of Intent to Serve Subpoena ("Notice") (Dkt. No. 299 at Ex. B), and attached subpoenas directed to the litigation financing companies requiring them to produce documents relating to Plaintiff, Defendants, and the instant lawsuit (the "Financing Materials").[3]

On January 31, 2014, Plaintiff filed the instant Cross-Motion. (Dkt. No. 298.) In relevant part, the Cross-Motion seeks reconsideration, under Federal Rule of Civil Procedure 54(b), of the Court's order granting Plaintiff leave to subpoena the litigation financing companies. According to Plaintiff, this Court should reconsider its ruling because a recent decision in this District, *Miller UK, Ltd. v. Caterpillar, Inc.*, Case No. 10 C 3770, 2014 WL 67340 (N.D. Ill. Jan. 6, 2014) (Cole, J.), represents a "controlling or significant change in the law" since the Court issued its January 3 Order. Plaintiff contends that the *Miller UK* decision establishes that none of the Financing Materials should be produced. Thus, Plaintiff urges the Court to reconsider its January 3 decision, deny MSC leave to subpoena the litigation financing companies, and quash the subpoenas.

---

[2] The January 3 Order addressed MSC's motion for sanctions, in which MSC claimed to have been irreparably prejudiced by Plaintiff's failure to produce certain documents responsive to MSC's discovery requests until the last day of fact discovery. (*See* Dkt. No. 268.) In its motion, MSC asked the Court to sanction Plaintiff for his late production by dismissing this lawsuit in its entirety or, alternatively, by reopening fact discovery so that MSC could conduct discovery regarding matters relating to the untimely production. The January 3 Order denied MSC's request to dismiss the case, but granted MSC leave to conduct limited additional discovery, including to subpoena documents from the litigation financing companies, whose communications with Plaintiff were not previously known to MSC.

[3] It is not clear from the record whether these subpoenas have been served on the litigation financing companies.

At the February 4, 2014 hearing on the Cross-Motion, Plaintiff's counsel represented that he did not have all of the Financing Materials, but that he believed many of the documents to be protected from disclosure as attorney work product. After some discussion, the parties agreed that Plaintiff would submit the Financing Materials in his possession for *in camera* review by the Court, after which MSC would accept production of any non-privileged Financing Materials directly from Plaintiff in lieu of obtaining the documents from the litigation financing companies via subpoena. Accordingly, the Court ordered Plaintiff to turn over the Financing Materials for *in camera* review. Plaintiff submitted to the Court approximately 150 documents comprised of roughly 650 pages of material, as well as a privilege log. Plaintiff asserts attorney work product protection over all or part of 65 of these documents. Plaintiff does not assert any privilege over the remaining documents, but nonetheless argues that he should be permitted to withhold them because they are not relevant to this case.

As discussed more fully below, the Court finds that all of the Financing Materials submitted by Plaintiff are relevant, and thus subject to discovery, but many are nonetheless protected from disclosure by the attorney work product doctrine.[4]

## II.

Under Federal Rule of Civil Procedure 54(b), the Court may exercise its inherent authority to reconsider interlocutory orders. *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the

---

[4] In reaching these conclusions, the Court made an individual privilege determination for each of the Financing Materials. *Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 879-80 (7th Cir. 2005) (a court must review all of the documents claimed as privileged and cannot rely on a "random sampling" of documents to determine privilege). However, the Court did not engage in a document-by-document assessment of relevance. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 223 (N.D. Ill. 2013) ("Absent extraordinary circumstances, the Court does not conduct *in camera* document reviews to determine relevancy for purposes of discovery.").

discretion of the district judge"); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable"). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). With respect to the "manifest error" requirement, the Seventh Circuit has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Plaintiff argues that *Miller UK* represents a "controlling or significant change in the law" that would support reconsideration of the Court's January 3 Order. The Court disagrees. *Miller UK*, while comprehensive and well-reasoned, does not represent a "controlling or significant change in the law." A decision by a magistrate judge on a discovery matter in one case does not constitute controlling precedent for another case. Furthermore, the reasoning of *Miller UK* is inapposite in this case. In *Miller UK*, the party seeking production of litigation financing documents argued that the documents were relevant because (1) the funding agreement was allegedly illegal under Illinois law; and (2) the documents were crucial to determining the real party in interest. 2014 WL 67340 at *6. The court found that these issues were not relevant to the case even under the liberal standards of Rule 26. *Id.* at *22.

In contrast, here, the Financing Materials are relevant because they could potentially shed light on the statute of limitations defense asserted by MSC. MSC raised the argument that Plaintiff's claims are time-barred in its motion to dismiss. (Dkt. No. 47.) And although the Court denied the motion to dismiss based on allegations in the complaint that Plaintiff did not discover his injury until 2006 (Dkt. No. 140 at 17-18), MSC has indicated that it will re-raise this defense

in a dispositive motion. (*See* Dkt. No. 261.) Because the timing and content of communications with the litigation financing companies could bear on the statute of limitations issue, the Financing Materials are relevant. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's . . . defense."). Accordingly, the Court denies Plaintiff's Cross-Motion to the extent it requests that the Court reconsider the January 3 Order.

In the Cross-Motion, Plaintiff also argues that the certain of Financing Materials should not be produced because they are protected by the attorney work product doctrine. Although Plaintiff styles his request as a motion to quash subpoenas, it is more properly construed as a motion for entry of a protective order pursuant to Rule 26(c).[5] The work product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *See* Fed. R. Civ. P. 26(b)(3); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The threshold determination of whether documents constitute work product generally is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been

---

[5] Defendants' Notice indicated that the subpoenas would issue from the U.S. District Court for the District of Delaware. (Cross-Motion at Ex. B., Dkt. No. 298.) This Court "lacks the power to enforce or modify subpoenas obtained from other district courts." *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 2001 WL 881354, at *7 (N.D. Ill. Aug. 2, 2001); *see also Hartford Fire Ins. Co. v. Transgroup Express, Inc.*, 264 F.R.D. 382, 384 (N.D. Ill. 2009) (citing Fed. R. Civ. P. 45(c)(3)(A)) ("A motion to quash . . . a subpoena must be filed and decided in the court from which the subpoena was issued."). However, the Federal Rules of Civil Procedure contemplate that a party to an action may challenge a subpoena directed to a non-party via a request for a protective order in the court where the action is pending, rather than in the court from which a subpoena to a non-party was issued. *See* Fed. R. Civ. P. 26 (b)(1) ("a[] party or any person from whom discovery is sought may move for a protective order *in the court where the action is pending* . . . .") (emphasis added). *See also, e.g., Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2012 WL 6634680, at *2 (S.D.N.Y. Dec. 19, 2012) ("a party may seek a Rule 26(c) protective order to preclude another party from obtaining discovery from a non-party via a subpoena issued by another court"); *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001); *Kruse, Inc. v. United States*, No. 1:99–CV–428, 2000 WL 35516935, at *2 (N.D. Ind. Sept. 29, 2000).

prepared for or obtained because of the prospect of litigation." *N. Shore Gas Co. v. Elgin, Joliet & E. Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995) (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)). Courts distinguish between "fact" (or "ordinary") work product and "opinion" work product: while fact work product includes raw factual information, opinion work product includes counsel's mental impressions, conclusions, opinions, or legal theories. *See, e.g., Hollinger Intern. Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 511-12 (N.D. Ill. 2005). Fact work product is subject to discovery when the party seeking discovery demonstrates a substantial need for the material and an inability to obtain the substantial equivalent of the information without undue hardship. *Caremark, Inc. v. Affiliated Computer Svcs., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000). On the other hand, "immunity from discovery for opinion work product is absolute or nearly absolute." *Id.*

With certain exceptions discussed below, the Financing Materials identified by Plaintiff in his privilege log constitute opinion work product. These materials incorporate opinions by Plaintiff's counsel regarding the strength of Plaintiff's claims, the existence and merit of certain of Defendants' defenses, and other observations and impressions regarding issues that have arisen in this litigation. The Court finds that these materials were prepared only "because of" this litigation, and that they include counsel's mental impressions, conclusions, opinions, or legal theories. Accordingly, these documents are protected from disclosure to Defendants. *See Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 n. 4 (7th Cir. 1996) (stating that Rule 26(b)(3) "expressly admonishes courts to give even greater protection against disclosure of opinion work product, meaning 'the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.'").

Furthermore, Plaintiff did not waive the attorney work product protection by sharing the Financing Materials with the litigation financing companies. Work product protection is only waived by disclosure to a third party when that disclosure "substantially increase[s] the opportunities for potential adversaries to obtain the information." *See Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025 (7th Cir. 2012). It is significant that these litigation financing companies entered into written nondisclosure agreements that agreed not to divulge any of the information supplied to them by Plaintiff's counsel. This fact "militates against a finding of waiver." *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 237-38 (N.D. Ill. 2000); *see also Mondis Tech., Ltd. v. LG Elecs., Inc.*, Nos. 2:07 CV 565, 2:08 CV 478, 2011 WL 1714304, at *2 (E.D. Tex. May 04, 2011). Additionally, the litigation financing companies had self-interested reasons to protect the work product from disclosure: breaching a written confidentiality agreement "would surely result in the inability to attract clients in the future." *See U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3 at al.*, No. 00 CV 4763, 2002 WL 31296430, at *6 (S.D.N.Y. Oct. 11, 2002). Because the disclosure of attorney work product to the litigation financing companies did not make it more likely that Defendants would obtain the protected material, there was no waiver of attorney work product protection for the Financing Materials.

Not all of the documents that Plaintiff claims as attorney work product, however, are entitled to such treatment. Plaintiff has asserted attorney work product protection over an e-mail from a public relations firm that was forwarded by Plaintiff's counsel to an employee of a litigation financing company; the e-mail attaches a memorandum from the public relations firm, as well as various news articles reporting on the instant case. (DOE_IC_00000221-48.) This e-mail and its attachments are not protected attorney work product, as the communications deal

only with the public relations firm's strategy to "generate media coverage." (DOE_IC_00000222.)  These types of communications do not implicate the attorney work product doctrine. *See Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (work product doctrine does not protect communications that "strategiz[e] about the effects of the litigation on . . . the media, or on the public generally."). *See also, e.g., Chevron Corp. v. Salazar*, 11 CV 3718, 2011 WL 3880896, at *1 (S.D.N.Y. Sept. 1, 2011) (public relations consultant's analysis of the public reaction to a court judgment is not protected as work product); *In re Prograf Antitrust Litig.*, 11 MD 02242, 2013 WL 1868227, at *3 (D. Mass. May 3, 2013) (attorney work product protection does not apply to communications discussing "standard public relations services related to . . . media fallout" from litigation did not constitute work product); *A & R Body Specialty and Collision Works, Inc., et al. v. Progressive Cas. Ins. Co. et al.*,  07 CV 929, 2013 WL 6044342, at *4 and n.2 (D. Conn. Nov. 14, 2013) (updates by public relations firm to attorney regarding public relations activities relating to litigation are not protected by attorney work product doctrine). Accordingly, DOE_IC_00000221-48 is not privileged and is subject to discovery in its entirety.

In light of the substantial work product concerns regarding the Financing Materials and the fact that MSC can obtain the documents from Plaintiff rather than seeking them from third parties (and, in fact, has agreed to do so), the Court finds good cause to enter a protective order. MSC shall refrain from serving subpoenas upon the litigation financing companies. [6]  *See* Fed. R. Civ. P. 26(c)(1). However, because the Financing Materials are relevant to Defendants' statute of limitations defense, the Court orders Plaintiff to produce all non-privileged Financing Materials to Defendants. Plaintiff should produce the non-privileged portions of documents listed as

_____

[6] In the event that subpoenas have been issued, the Court orders MSC to not obtain any documents or other things pursuant to them. *See Donziger*, 2012 WL 6634680, at *7.

"redacted" on the privilege log submitted to the Court, but may redact the portions of these documents as indicated to the Court.[7] In light of the personal information contained in the Financing Materials, Plaintiff may designate appropriate portions of these materials as Confidential Information in accordance with the Agreed Confidentiality Order entered in this case. (Dkt. No. 160.) The Court further orders Plaintiff to produce an appropriate privilege log to Defendants.

## CONCLUSION

For the reasons stated above, Plaintiff's Cross-Motion is denied to the extent it seeks reconsideration of the Court's January 3 Order. The Court construes the Cross-Motion as also requesting a protective order pursuant to Federal Rule of Civil Procedure 26(c), and grants that relief with respect to third-party discovery from litigation financing companies with which Plaintiff has communicated. MSC shall refrain from serving, or obtaining documents pursuant to, subpoenas directed to the litigation financing companies. Instead, Plaintiff shall produce all non-privileged communications with the litigation financing companies relating to Defendants or this lawsuit, including the non-privileged portions of documents listed as "redacted" on the privilege log submitted to the Court. Plaintiff also shall produce the document bates-labeled DOE_IC_00000221-48 in its entirety. Plaintiff shall produce these materials, as well as an appropriate privilege log, to Defendants within 14 days of the entry of this Order.

Entered:

Dated: May 1, 2014

Andrea R. Wood
United States District Judge

---

[7] The Court notes that none of the redacted material bears on the issue of when Plaintiff discovered his injury.